AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

for the

Western District of Arkansas

JAN 0 8 2020

DOUGLAS F. YOUNG, Clerk
By _____
Deputy Clerk

In the Matter of the Search of )
)
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information associated with Apple ID: 911577557 and )
Apple ID: 11650460965, that is stored at premises )
controlled by Apple, Inc. )

Case No. 5:20cm4

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ Western _____ District of _____ Arkansas _____ *(identify the person or describe property to be searched and give its location)*: See "Attachment A"

This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711 (3)(A) and Federal Rule of Criminal Procedure 41

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____ 18 _____ U.S.C. § _____ 1343/666 _____ , and the application is based on these facts: Wire Fraud and Theft of Federal Funds -See attached "Affidavit"

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathan Willett, SA FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1 8 2020

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Erin L. Wiedemann, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
Apple ID: 911577557, Apple ID:
11650460965, THAT IS STORED AT
PREMISES CONTROLLED BY APPLE,
INC.

Case No. _____

**Filed Under Seal**

## APPLICATION AND AFFIDAVIT IN
## SUPPORT OF A SEARCH WARRANT

I, Jonathan Willett, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a warrant to search
information associated with certain accounts that are stored at premises controlled by
Apple, Inc., an email provider headquartered at One Apple Park Way, MS: 169-5CLP,
Cupertino, CA, 95014 ("the PROVIDER"). The TARGET ACCOUNT, namely an Apple
iCloud Account owned by Simon ANG that includes linked email accounts with the Apple
IDs 911577557 and 11650460965, to be searched is described in the following paragraphs
and in Attachment A. The items and evidence for which to be searched are described in
Section I of Attachment B. The request to search for item(s), the information stored by the
PROVIDER, is made pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A),
requiring the PROVIDER to disclose to the government copies of information (including
the content of communications) further described in Section I of Attachment B. Upon
receipt of the information described in Section I of Attachment B, government-authorized

1

persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since January 8, 2017. I am presently assigned to the Little Rock Field Office Fayetteville Resident Agency National Security Squad, which investigates, among other things, matters related to 18 U.S.C. § 666, Theft or bribery concerning programs receiving Federal funds and 18 U.S.C. § 1343 Wire Fraud violations (the Subject Offenses). Further, I have received basic training in cyber-based investigative techniques pertaining to the use of the internet and email in the furtherance of crimes.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## JURISDICTION

4.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.

## LEGAL BACKGROUND

5.     Title 18, United States Code, Section 666 provides that "[w]hoever, if the circumstances described in section (b) of this section exits . . . being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof . . . corruptly solicits or demands for the benefit of any person or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection

2

with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more" is a violation of federal law.

6.      The circumstances described in section (b) "is that the organization, government, or agency receives, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." The term "agent" means "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative. The term "government agency" means "a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program."

7.      Title 18, United States Code, Section 1343 provides that transmitting "by means of wire, radio, or television communication" any "writing, signs, signals, pictures or sounds" (or causing any such false statements to be transmitted), in interstate or foreign commerce, for the purpose of executing "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" is a violation of federal law.

8.      The TARGET ACCOUNT identified herein includes email transactions, along with additional information described in greater detail in Attachment B, Section I. Documents such as contracts, applications, or purchase orders may be stored electronically

3

on an email account. As a result, there is probable cause that evidence of the subject offenses will be found on the TARGET ACCOUNT.

9.      As detailed below there is probable cause to support that Simon Saw-Teong Ang (Ang) has received, and possible is continuing to receive, funding from the Chinese Government during the time that he was also soliciting and receiving research grants from various United States Government agencies. Ang's close ties to the Chinese government and employment with numerous Chinese companies would have made him ineligible to receive grants issued by United States Government agencies. Ang's use of his email (which was a wire transmission) to communicate with other Chinese and to facilitate his relationship with Chinese companies was an apparent part of his scheme to defraud both the University of Arkansas and the United States Government. Specifically, the emails, information, and facts summarized below indicate that Ang was using his Yahoo and UA email addresses, which are linked to the TARGET ACCOUNT to exchange information with Chinese contacts regarding his close ties with the Chinese government and his employment with Chinese companies. Information provided by the PROVIDER indicated that Ang utilized emails, photos, text messages, calendar, and notes linked to the TARGET ACCOUNT. These emails were at least admissions and potentially evidence that identifies Ang's criminal conduct and the identity and conduct of potential co-conspirators. Therefore, these emails, photos, text messages and other items associated with the TARGET ACCOUNT would help corroborate the criminal conduct described herein. Finally, these items also provided probable cause to believe that Ang's emails and data maintained by the PROVIDER contain other information relating to his ties to the Chinese government and his employment with Chinese companies, both of which would be

4

violations of Title 18, United States Code Section 666 and Title 18, United States Code Section 1343.

## PROBABLE CAUSE

10. Simon Saw-Teong Ang (Ang) is a professor and researcher at the University of Arkansas – Fayetteville (UA). Ang has been employed at the UA since approximately the Fall Semester of 1988. At the UA Ang serves as the Director of the High Density Electronics Center (HiDEC). The HiDEC performs proprietary research as well as United States Government (USG) funded research. The UA is a public land grant research university located in Fayetteville, AR. A variety of research is performed at UA to include the fields of agriculture and engineering. Research at UA is funded through a variety of means, with the majority of funding coming from the United States Government funding agencies such as the National Science Foundation (NSF), Department of Energy (DOE), Department of Defense (DOD) and the National Aeronautics and Space Administration (NASA). Since approximately 2013, Ang has been either the primary investigator or co-investigator on USG funded grant contracts totaling approximately $5,064,861.50. As explained in detail below, there is probable cause to believe Ang maintained his employment at UA despite holding other positions at a Chinese university and Chinese companies, in violation of UA policy. As also explained below, Ang made false statements and failed to report his outside employment to UA which enabled Ang to keep his UA job as well as obtain USG research funding. I have reviewed numerous email and other records that indicate the TARGET ACCOUNT is assigned to Ang.

5

11. On or about June 20, 2019 a staff member (STAFF1) at UA David W. Mullins
    Library (DWML) provided details on how they discovered an email between UA
    Professor Simon Ang and Rui Xi, a visiting researcher from Xidian University in
    Xi'an, China. Every Saturday items that have been found and turned into the DWML
    lost and found are placed in a box on STAFF1's desk. STAFF1 makes an effort to
    identify the owners and return all lost items before they go into storage at the UA. In
    an attempt to identify the owner of a hard drive from the lost and found, STAFF1
    reviewed the hard drive contents for any information which could identify the owner.
    One of the files labeled "Ang_Confidential.pdf" was opened. The file contained a
    saved email exchange between Xi and Ang. STAFF1 provided a copy of the email to
    Agents and portions of the email exchange are provided below:

12. On or about September 15, 2018, Ang using simonang413@163.com wrote, *"Please
    do not send e mails to my 163 e mail and copied my university e mail! This is too late
    as the university now knows about my 163 e mail!"*

13. On or about September 14, 2018, Xi wrote, *"I am so so sorry, can I apply a new 163
    email for you? Rui"*

14. On or about September 14, 2018, Ang wrote, *"Please do not worry, I need to see
    what I can do! I am working on my NASA report and I shall take a look at your
    proposal later! Take care! Simon"*

15. On or about September 15, 2018, Ang wrote: *"Dear Rui, I want you to understand
    that I will do my best to support your stay here in Arkansas, there are things that are
    becoming very difficult for me recently because of the political climate. You can
    search the Chinese website regarding what the US will do to Thousand Talent*

6

*Scholars. Not many people here know I am one of them but if this leaks out, my job here will be in deep troubles. I have to be very careful or else I may be out of my job from this university. I hope you understand my deep concerns...Please keep this to yourself as I trust you. I have also spoken to Dr. Chen's new student from Xidian but I did not tell him the full story, just tell him to keep quiet about Dr. Chen and my involvement in Xidian. Otherwise, we may be "fired" from our jobs here. After you read this e-mail, please delete for safety sake as any e-mail can be retrieved. "*

16. On or about April 17, 2019, Ang was interviewed and the interview was documented by UA staff and administrators. During the interview Ang was shown the aforementioned "Ang_Confidential.pdf", containing the email exchange obtained by STAFF1. Ang indicated to UA staff and administrators that he did recognize the email.

17. Talent recruitment programs (also called talent plans) are a vital part of a Chinese government national strategy to enhance Chinese civilian and military programs in key areas critical to China's development. Talent plans integrate foreign technology into China by recruiting experts from businesses and universities across the globe to fill technical jobs that drive innovation and growth in the economy. Various Chinese government talent programs use financial, personal, and professional benefits in exchange for working with universities, businesses, and state-owned enterprises in China.

18. Talent plans target scientists, engineers, professionals, foreign government employees, and contractors to bring foreign research and technology with them to Chinese universities, businesses, and state-owned enterprises in China. All talent

7

programs constitute a contractual funding source from a foreign government. Examples of talent plans include 1000 Talents, Overseas expert, specially recruited expert and friendship awards. The Friendship award is for overseas experts whom the PRC acknowledges have made significant contributions to the countries social and economic progress.

19. On approximately August 6, 2019 a Chinese news article obtained via the URL *https://kknews.cc/science/3ogxrj8.html*, was obtained by the FBI. Ang is also referred to by the Chinese Pinyin name Hong Sizhong (aka 洪思忠, STC 3163/1835/1813)[1] in these articles. The article was translated, and a summary of the article is as follows:[2]

20. *"In this article, accomplishments made by 30 Thousand Talents Program experts for the month of August are listed. Among which, HONG Sizhong is listed at No. 13 with the following heading, "Thousand Talent Program" expert HONG Sizhong receives Qilu Friendship Award." The article states that according to a recent announcement made by the People's Government of Shandong Province, "Thousand Talents Program" expert HONG Zizhong, an expert introduced by Binzhou Maotong Electronic Technology Co., Ltd., is one of the 20 recipients of the 2018 Qilu Friendship Award. The article also provides a background summary of HONG, including his current position as a tenured professor at the University of Arkansas, a director of the High Density Electronics Center, at the same, as a technical director of Binzhou Maotong Electronic Technology Co., Ltd. In 2012, ZHONG was selected*

[1] Hanyu Pinyin, or Pinyin, is the official Romanization system for Standard Chinese. Pinyin without tone marks is used spell Chinese names and language written in the Latin alphabet. The International Organization for Standardization adopted Pinyin in 1982, and later by United Nations in 1986. ["ISO 7098:1982 – Documentation – Romanization of Chinese" Retrieved 1 March 2009 and Margalit Fox (14 January 2017). "Zhou Yanguang, Who Made Writing Chinese as Simple as ABC, Dies at age 111." The New York Times.]

[2] This is a summary of a Chinese-language article. This summary is not intended to be a verbatim translation and transcript of the article, but does accurately represent the substance and nature of the article.

8

*by the People's Government of the Shandong Province as a "Taishan Scholar"*
*overseas distinguished expert. In 2014, selected as an expert for the national*
*"Thousand Talents Program" and selected as a national distinguished expert in*
*2016.*

21. As detailed below, Ang did disclose his participation to UA in his participation in
"Thousand Talents Scholars" in 2014, but did not disclose his participation in other
programs in 2012, 2016 or 2018.

22. On or about April 17, 2019, Ang was interviewed by UA staff and administrators. UA
staff and administrators documented the interview of Ang and provided it to the FBI.
During the interview, Ang was asked about his affiliation with "Thousand Talents
Scholars". Ang indicated that "20/21 years ago, his brother's business was a pioneer
in the LED lighting business in China. Funding was provided to this company by the
Thousand Talents Program and as the most senior technical advisor, his name was
submitted when they applied. This resulted in Dr. Ang's designation as a Thousand
Talent Scholar... Dr Ang indicated that his only association (membership) was
through his brother's company."

23. An April 18, 2019 email from Ang's UA email stated, *"I found a signed outside*
*employment form (through our secretary, Connie) that was approved by Juan in 2014*
*which was the year that I did my Thousand Scholar Plan with my brother's*
*company."*

24. A September 27, 2018 email from Ang's UA email included an application for a job
at Zhejiang University/University of Illinois at Urbana-Champaign Institute China. In

9

the application package, Ang noted he received Talent funding (State Specially
Recruited Expert) in 2016.

25. On Ang's UA Disclosure of Potential Conflict of Interest and Commitment form
    signed September 16, 2014 by Ang, he acknowledged, *"I have read the campus
    policy on conflict of interest and commitment, and I disclose the attached explanation
    of the nature of each potential conflict of interest or appearance thereof in
    compliance with that policy"*. Ang documented his potential conflict of interest and
    commitment on the Approval of Outside Employment, (Appendix B) covering the
    dates from September 15, 2014 through September 14, 2015. On the form Ang stated
    he would participate in, *"consulting to various industrial clients as opportunity arises
    as a professional engineer. No specific locations and schedule. University
    assignments will be made up. No university facilities, property, and personnel will be
    required."*

26. On Ang's UA Disclosure of Potential Conflict of Interest and Commitment form
    signed August 27, 2012, he acknowledged, *"I have read the campus policy on
    conflict of interest and commitment, and I have no conflicts of interest to disclose."*

27. On Ang's UA Disclosure of Potential Conflict of Interest and Commitment form
    signed August 24, 2016, he acknowledged, *"I have read the campus policy on
    conflict of interest and commitment, and I have no conflicts of interest to disclose."*

28. On Ang's UA Disclosure of Potential Conflict of Interest and Commitment form
    signed August 30, 2018, he acknowledged, *"I have read the campus policy on
    conflict of interest and commitment, and I have no conflicts of interest to disclose."*

29. On May 14, 2013, Ang stated in an email "Please send e-mail to my private yahoo e-mail account….you know they monitor e-mails everywhere….". Additionally, in an email dated September 24, 2018, Ang listed his Yahoo email account as simon_ang_2001@yahoo.com. Ang has also forwarded multiple items from his siang@uark.edu email to his simon_ang_2001@yahoo.com. For instance on May 3, 2017 Ang emailed multiple files to his simon_ang_2001@yahoo.com email with the title "FW: Module design files".

30. Information provided by Apple on approximately September 12, 2019 indicated Ang linked his email accounts siang@uark.edu (DSID: 11650460965) and simon_ang_2001@yahoo.com (DSID: 911577557) to an Apple account (The TARGET ACCOUNT) owned by him.

31. The Apple account linked to email address simon_ang_2001@yahoo.com listed Ang's home address as associated with the account. Information provided by Apple indicated Ang's account linked to email simon_ang_2001@yahoo.com backed up associated devices, calendars, iCloud device backup, iCloud drive, iCloud photos, Notes and Safari browsing history.

32. The Apple account linked to email address siang@uark.edu listed one of Ang's UA office addresses as associated with the account. Information provided by Apple indicated Ang's account linked to email siang@uark.edu address utilized Apple iCloud to backup associated devices bookmarks, calendars, iCloud Drive, iCloud Photos and notes.

33. Evidence of Ang's crimes are likely to be found his Apple iCloud account(s) In an email sent by Ang on or about February 3, 2017, Ang directed his communication

with someone about employment at a Chinese company utilizing his siang@uark.edu
email account. In the email, Ang stated "I am so tired and will talk to you by text
when I wake up." The content of Ang's text will be included as part of Ang's Apple
iCloud device backup.

34. In an email from Ang on or about October 17, 2017, Ang sent a picture to Prof Li and
stated "Here attached is our photo! Thanks, Simon". The picture shows Ang and an
unknown individual with buildings and vehicles consistent for the picture being taken
in Asia. Additionally, the metadata from the photo indicates it was taken using an
iPhone in Xi'an, China.

## Ang Held Outside Employment in China

35. While working as a professor at UA, Ang also held multiple positions in China
without reporting them. Since the start of this investigation, the FBI obtained
evidence of Ang's undisclosed employment with outside companies other than the
UA. Multiple Chinese articles detailed Ang's participation in outside companies.

36. Open source news articles in Chinese obtained on August 14, 2019 from the URL
*https://kknews.cc/society/kabbkq.html*, indicated that Ang utilizes the Pinyin name
Hong Sizhong. The article contained an image with the caption, "Police officer presents
the city's first 'green card' to American Chinese HONG Sizhong" (aka 洪思忠, STC
3163/1835/1813). Agents confirmed the picture in the article referred to as Hong
Sizhong is that of Simon Ang. The article also lists Ang's name in Pinyin and English
as "洪思忠 (SIMONSAW-TEONGANG)". On or about July 16, 2019, a Chinese news
article was obtained from www.yybnet.net/binzhou/news/201808/7939771.html titled,
"Gaoxin District National "Thousand Talents Plan" Expert Hong Sizhong Receives the

12

2018 Qilu Friendship Award." The article stated, "Hong Sizhong is a tenured professor and the director of the High Density Electronics Center at the University of Arkansas in the US." According to UA's website, the only Director of the High Density Electronics Center at the University of Arkansas is Simon Ang.

## Ang's affiliation with Chinese companies

### Binzhou Maotong Electronic Technology Co. Ltd

37. On or about July 16, 2019, a Chinese news article was obtained from www.yybnet.net/binzhou/news/201808/7939771.html titled, "Gaoxin District National "Thousand Talents Plan" Expert Hong Sizhong Receives the 2018 Qilu Friendship Award." The article stated was translated and a summary is provided below[3]:

38. *"Hong Sizhong is a tenured professor and the director of the High Density Electronics Center at the University of Arkansas in the US. He is also the Chief Technology Officer for Binzhou Maotong Dianzi Keji Co., Ltd [STC: 3453/1558/5399/6639/7193/1311/4430/2111]. Hong was selected as "Taishan Scholar Specially Recruited Overseas Expert" in 2012, National "Thousand Talents Plan" Expert in 2014, and State Specially Recruited Expert in 2016. His field of research includes the R&D and manufacturing of ultra-precision integrated circuit and research on the packaging and application of third generation semiconductor materials such as silicon carbide. Hong is one of the internationally acclaimed experts in the fields of ultra-precision micro-drive control system and device manufacturing, simulation, and new material packaging. While working in Shangdong, Hong successfully tackled the difficulties surrounding the technologies for high power AC LED driver chip, new*

---

[3] As noted above, this summary is not intended to be a verbatim translation and transcript of the article, but does accurately represent the substance and nature of the article

*energy automobile SiC inverter control system, SiC specialized module packages, etc. He has received "R&D" awards multiple times and published more than 50 papers in internationally renowned journals such as IEEE journals. Hong assisted Binzhou University in establishing the College of Aeronautical Engineering, established a research team of more than 20 PhDs, and sent faculty to the US for training in two batches. Hong's scientific research team has obtained more than 40 patents and published more than 70 papers at provincial and ministerial levels. Hong is the principal investigator for a research project on new hydrogen fuel cell vehicle control system. Currently product samples have been delivered and it is estimated to have an annual production value of more than two billion yuan after actual production of the project begins. "* \$2 Billion Yuan equaled approximately \$292 million USD[4].

39. Ang did not disclose his participation or work with **Binzhou Maotong Electronic Technology Co. Ltd via** the UA Conflict of Interest and Commitment for the 2011-2018 school years in violation of UA policies and procedures[5].

**Jiangsu Xuan Zhi New Materials and Technology Co., Ltd. (XZNIA)**

40. On August 7, 2019, the company information for Jiangsu Xuan Zhi New Materials and Technology Co., Ltd. (XZNIA) was obtained from the website qichacha.com[6]. A draft translation of the website provided the following information. Ang is listed as one of three shareholders of XZNIA holding approximately 21.36% of the company, and had contributed 1,000,000 RMB as of November 20, 2017 while subscribed to contribute

___

[4] The conversion of Chinese Yuan and US Dollar based on US Federal Reserve Bank exchange rate for June 30, 2019 of 6.8444 RMB to 1 USD.
[5] For example, Ang is a Co-PI (co-recipient) of NSF Grant 1747757. This award provided support for UAF research conducted between approximately January 2, 2018 through approximately December 31, 2019. The NSF requires a conflict of interest disclosure as part of the Grant *"The AOR is required to complete certifications stating that the organization has implemented and is enforcing a written policy on conflicts of interest (COI), consistent with the provisions of PAPPG Chapter IX.A.; that, to the best of his/her knowledge, all financial disclosures required by the conflict of interest policy were made; and that conflicts of interest, if any, were, or prior to the organization's expenditure of any funds under the award, will be, satisfactorily managed, reduced or eliminated in accordance with the organization's conflict of interest policy."*
[6] Obtained from the website *www.qichacha.com/firm_7950ac69ee89b93a1057a2c71a285e56.html*

14

4,700,000 RMB in capital. Ang did not disclose his participation or work with XZNIA in the UA Conflict of Interest and Commitment for the 2011-2018 school years in violation of UA policies and procedures and NSF Grant funding Policies.

## INFORMATION REGARDING APPLE ID AND iCLOUD[7]

41. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

42. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

   a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

   b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

   c. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

   d. iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected

---

[7]    The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

15

device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

43. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

44. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

45. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

46. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store

17

and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

47. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

48. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS

18

device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

49. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

50. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. As noted in paragraphs 33 and 34 above, there is probable cause in to show that Ang communicates with potential co-conspirators using text messages and that he has received photographs related to the facts under investigation in this case. Such photographs represent evidence that could help establish the locations and identities of others involved in this conspiracy.

51. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email

19

and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

52. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

53. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

54. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

20

**CONCLUSION**

58. Based on the foregoing, I request that the Court issue the proposed search warrant. As the search warrant also pertains to the PROVIDER, because the warrant will be served on the PROVIDER, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of that part of the requested warrant at any time in the day or night.

59. I further request that the Court order that all papers in support of this application, including the affidavit, search warrant, and search warrant return, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation. However, I seek authority to release the documents as discovery in related criminal cases without the need for these pleadings to be unsealed.

60. For the same reasons, I further request, pursuant to 18 U.S.C. § 2705(b), that the Court prohibit the Providers from disclosing the existence of this warrant and its service on the account to the subscriber or any other person. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the email account would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy or tamper with evidence, change

21

patterns of behavior, intimidate potential witnesses, notify confederates, or flee from

prosecution.

Respectfully submitted,

Jonathan Willett
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____, 2020

Honorable Chief Magistrate Judge Erin Wiedemann
UNITED STATES MAGISTRATE JUDGE

22

## **ATTACHMENT A**

### **Properties to Be Searched**

This warrant applies to information associated with Apple ID: 911577557 and Apple ID:

11650460965 that is stored at premises owned, maintained, controlled, or operated by Apple, Inc.,

One Apple Park Way, MS: 169-5CLP, Cupertino, CA, 95014.

## **ATTACHMENT B**

### **Particular Things to be Seized**

### **I. Information to be disclosed by Apple (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDF A"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"). Mobile Subscriber

Integrated Services Digital Network Numbers ("MSISDN"). International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.  The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.  The contents of all instant messages or other stored messaging applications associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.  The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging and query logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers);

g. All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including. but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 666 ("Theft or Bribery Concerning Programs Receiving Federal Funds") and 18 U.S.C. § 1343 ("Fraud by Wire, Radio, or Television") since January 1, 2013, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

b.      Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

c.      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

d.      Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

e.      Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

## III.    Means of Production

Apple Inc.. shall disclose responsive data, if any, by sending to Federal Bureau of Investigation, C/O: Special Agent Jonathan Willett at 75 N. East Street, Suite 301, Fayetteville, Arkansas 72701 via U.S. Postal Service or another courier service. Alternatively, Apple Inc. can provide responsive data via electronic delivery C/O Special Agent Jonathan Willett, email address jwillett@fbi.gov.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.